STATE OF FLORIDA, ex rel., CLAUDE HALL, *Plaintiff in Error,* v. P. J. STEELE, as Sheriff of Okaloosa County, Florida, *Defendant in Error.*

Division A.

Opinion filed July 31, 1928.

*L. V. Trueman,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, *Roy Campbell,* Assistant, and *John M. Coe,* for Defendant in Error.

ELLIS, C. J.—Claude Hall was arrested and held in custody by the sheriff of Okaloosa County upon a warrant issued by the county judge in which it was charged that Hall unlawfully on the 21st day of September, 1927, took trout fish from certain waters called the "Narrows," by means of a gill net, and that he was not at that time specifically permitted so to do under the provisions of Chap. 11838 Laws of Florida, 1927, and that he did not return the fish alive to the water. A second count in the warrant charged that he took fish known as mullet from those waters with a gill net without having first procured from the State Game Commissioner a permit for the catching of mullet. A third count charged that he used a gill net for the purpose of taking fish from the said waters which net did not have attached thereto a metal tag issued by the State Game Commissioner.

Hall obtained a writ of *habeas corpus* and moved to quash the return of the sheriff which set out the warrant in full, but the sheriff in the return states that the warrant was issued under authority of Chap. 13529 Laws of 1927. The circuit judge denied the motion to quash and remanded the petitioner to the custody of the sheriff.

The case is here on writ of error. The petitioner contends that the warrant shows on its face that it was issued under the provisions of Chap. 13529 Laws of 1927, which was approved June 8, 1927, and that the Act was repealed by Chap. 11838 Laws of 1927.

The latter Act was approved June 10, 1927, and by its provisions became effective July 1, 1927. It is a general

Act relating to "Game, non-Game Birds, Fresh-Water Fish and Fur Bearing Animals"; creates the department of "Game and Fresh-Water Fish"; creates the office of "State Game Commissioner"; defines his duties and powers and that of his deputies; prescribes their compensations; makes provision for the protection and conservation of "Game, non-Game Birds; Fresh-Water Fish and Fur-Bearing Animals," and prescribes the times when and means by which and to what extent they may be taken; and provides for the prosecution of persons violating the provisions of the Act. It is as stated a general Act dealing with the whole subject relating to game, non-game birds, fresh-water fish and fur-bearing animals and their conservation and protection in this State. The Act by the provisions of Sec. 75 expressly repeals all other general or special laws or parts of general or special laws relating to game, fresh-water fish, birds or fur-bearing animals whether in conflict with the general Act or not.

Chap. 13529 Laws of 1927, is a special Act applying only to certain inland salt waters in Walton and Okaloosa Counties and placing such waters under the law governing fresh water fish and regulating the taking of salt water trout. The Act declares a certain portion of Santa Rosa Sound lying in the boundaries of Okaloosa County and the waters known as the "Narrows," Choctawhatchee Bay, and other salt waters, as fresh waters and prohibits the taking of more than fifteen salt water trout therefrom in any one day.

The Act places such waters and the matter of taking fish therefrom under the regulation of the "General Game and Fresh-Water Fish Law" of the State.

Sec. 25 of the general Act, Chap. 11838, denounces the offense of taking fresh-water fish from the fresh waters of the State at the time and by the means as charged against

the petitioner. But the waters from which the petitioner took the fish are salt waters and are not embraced within the provisions of the general Act.

Assuming that the special Act may declare salt waters of bays and other inland salt waters to be fresh waters and attach them to the jurisdiction of the State Game Commissioner under the provisions of the general Act, a point we do not decide, the fact remains that the latter Act expressly repealed the special Act so that its provisions were without any force or effect when the petitioner was arrested and detained.

The judgment is reversed and it is ordered that the petitioner be discharged from custody.

STRUM, AND BROWN, J. J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.